IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  24-cv-473 |
| | ) | |
| WALMART, INC., CBRE, INC., and | ) | |
| ANTONIO BROADWAY, | ) | |
| | ) | |
| Defendants. | ) | |

COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Westfield Insurance Co., ("Westfield"), by its attorneys, Esp Kreuzer Cores LLP,

pursuant to 28 U.S.C. 2201 and 2202, for its Complaint for Declaratory Judgment against

Defendants,  WALMART, INC., CBRE, INC., and ANTONIO BROADWAY, states:

I.  THE PARTIES

1.      Westfield is an Ohio corporation, with its principal place of business in Westfield

Center, Ohio. At all times relevant herein, Westfield was authorized to issue policies of

insurance in the State of Illinois and issued a certain policy to its named insured, Arctic Snow &

Ice Control, Inc., as detailed herein.

2.      Walmart, Inc. is a Delaware Corporation, with its principal place of business in

Bentonville, Arkansas. The underlying complaint alleges that at all relevant times, Walmart, Inc.

conducted work or operations at or near 16251 S. Farrell Road, Lockport, Will County, Illinois.

3.      CBRE, Inc. is a Delaware Corporation, with its principal place of business in

Dallas, Texas. The underlying complaint alleges that at all relevant times, CBRE, Inc. conducted

work or operations on the premises 16251 S. Farrell Road, Lockport, Will County, Illinois.

4.      Antonio Broadway is the underlying plaintiff and is a resident of Will County,

Illinois.

## II.  JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, Westfield is a citizen of the State of Ohio. Upon information and belief, Walmart, Inc. is a citizen of the State of Arkansas. Upon information and belief, CBRE, Inc. is a citizen of the State of Texas. Upon information and belief, Antonio Broadway is a citizen of the State of Illinois.

6.      Venue of this action in the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391(a), (b), and (c), because Westfield issued the liability policy to Arctic Snow & Ice Control, Inc. at 22763 S. Center Road, Frankfort, Will County, Illinois; the underlying lawsuit is pending in the Northern District of Illinois, Eastern Division; and the underlying plaintiff is a Will County, Illinois resident.

## III.  THE UNDERLYING LAWSUIT

7.       On February 7, 2023, Antonio Broadway filed a complaint against Walmart, Inc., in Will County, Illinois, seeking to recover for bodily injury allegedly sustained when he encountered an accumulation of ice and snow within the parking lot at or near the premises 16241 S. Farrel Road, Lockport, Illinois, and injured himself. (Dkt. 1-2 at 1-2¶¶1-9) is a copy of the underlying complaint.

8.      The underlying complaint alleges that Antonio Broadway was Walmart, Inc.'s customer at the time of the alleged accident. (Dkt. 1-2 at 1¶3).

9.      The underlying complaint alleges that Walmart, Inc. "by and through its agents and employees, owed the Plaintiff and others like him a duty of ordinary care to protect him from harm on the premises and to maintain the premises in a reasonably safe condition." (Dkt. 1-2 at 2¶6).

10. The underlying complaint alleges that Walmart, Inc. breached that duty by negligently: a) allowing the premises to become and remain in an unsafe condition, when Walmart, inc. knew or should have known that ice, snow, and water created a hazardous condition for all individuals lawfully in the area; b) negligently failed to maintain the parking lot; c) negligently failed to adequately inspect the premises; d) negligently failed to warn; e) negligently failed to remove ice, snow, and water; f) negligently failed to implement proper procedures for the removal of snow, ice, and water; g) negligently failed to instruct employees/agents to properly remove ice, snow and water; h) negligently failed to remove ice, snow, and water from its premises after voluntarily undertaking the same; and i) caused the premises to become slippery. (Dkt. 1-2 at 2-3¶7).

11. Walmart, Inc. first received the underlying complaint when Walmart, Inc. was served with process on February 17, 2023. (Dkt. 1-3) is a copy of the Service of Process Transmittal.

12. Prior to March 10, 2023, National Union Fire Insurance Company of Pittsburgh, PA, d/b/a AIG, issued a commercial general liability policy that identified Walmart, Inc. on the schedule of named insureds.

13. Prior to March 10, 2023, Walmart, Inc. provided notice of the *Broadway* lawsuit to AIG.

14. Prior to March 10, 2023, AIG retained O'Hagan Meyer, LLC to defend Walmart, Inc. against the *Broadway* lawsuit.

15. On March 10, 2023, Walmart, Inc., by and through its attorney James P. Balog, of O'Hagan Meyer, LLC, filed its appearance in the *Broadway* lawsuit. (Dkt. 1-4) is a copy of the Appearance that Walmart, Inc. filed on March 10, 2023.

16. On March 27, 2023, Walmart, Inc., by and through its attorney Ariel T. Flood, of

O'Hagan Meyer, LLC, filed a Notice of Removal; paragraph 4 of which admits that Walmart, Inc. first received the underlying complaint when Walmart, Inc. was served with process on February 17, 2023. (Dkt. 1-5 at 2¶4) is a copy of the Notice of Removal that Walmart, Inc. filed on March 27, 2023.

17.     On June 9, 2023, Antonio Broadway filed a first amended complaint with the Clerk of the Northern District of Illinois, Eastern Division, adding CBRE, Inc. as a defendant. (Dkt. 1-6) is a copy of the underlying first amended complaint.

18.     The factual allegations against Walmart, Inc. within the underlying first amended complaint are substantially the same as the factual allegations within the original underlying complaint. (Dkt. 1-6).

19.     The underlying first amended complaint alleges in the alternative that CBRE, Inc. "by and through its agents and employees, owed the Plaintiff and others like him a duty of ordinary care to protect him from harm on the premises and to maintain the premises in a reasonably safe condition." (Dkt. 1-6 at 4¶8).

20.     The underlying first amended complaint alleges in the alternative that CBRE, Inc. breached that duty by negligently: a) failing to timely perform contractual duties after snow, ice, and water accumulated; b) failing to completely remove ice, snow, and water; c) failing to further inspect for remaining ice, snow, and water accumulation; and d) failing to ensure the premises were left in a good, safe, and proper conditions for persons lawfully on the premises. (Dkt. 1-6 at 2-5¶12).

21.     At all times relevant, CBRE, Inc. has held itself out as the global leader in commercial real estate services and investments.

22.     At all times relevant, CBRE, Inc. has employed in-house attorneys.

23.     At all times relevant, CBRE, Inc. has had a history of purchasing commercial general

liability policies of insurance as well as umbrella liability policies of insurance.

24.     On July 10, 2023, Walmart, Inc., by and through its attorney James P. Balog, filed a notice of change of attorney address or name. (Dkt. 1-7) is a copy of the notice.

25.     Prior to July 17, 2023, CBRE, Inc. provided notice of the *Broadway* lawsuit to its commercial general liability insurer.

26.     On or before July 17, 2023, the commercial general liability insurer for CBRE, Inc. retained the attorneys at Clausen Miller P.C. to defend CBRE, Inc. against the *Broadway* lawsuit.

27.     On July 17, 2023, Brian J. Riordan, of Clausen Miller P.C., filed his appearance on behalf of CBRE, Inc. in the *Broadway* lawsuit. (Dkt. 1-8) is a copy of the appearance.

28.     Prior to August 28, 2023, Walmart, Inc. tendered its defense to CBRE, Inc. and CBRE, Inc.'s commercial general liability insurer.

29.     On or before August 28, 2023, CBRE, Inc.'s general liability insurer retained Clausen Miller, P.C., to defend Walmart, Inc.

30.     On August 28, 2023, Brian J. Riordan and Brannon J. Simmons, of Clausen Miller, P.C., filed a motion to substitute as attorneys for Walmart, Inc. in the *Broadway* lawsuit in lieu of Ariel T. Flood and James P. Balog. (Dkt. 1-9) is a copy of the motion to substitute attorneys.

#### IV.  NOTICE TO WESTFIELD OF THE ACCIDENT AND THE UNDERLYING LAWSUIT

31.     On October 16, 2023, Westfield first received notice of Broadway's accident.

32.     On October 16, 2023, Westfield first received notice of the *Broadway* lawsuit.

#### V.  THE WESTFIELD COMMERCIAL PACKAGE POLICY

33.     Westfield issued a commercial package policy to Arctic Snow & Ice Control, policy number CMM 137392H, effective May 1, 2021 to May 1, 2022. (Dkt 1-10) is a copy of the Westfield commercial package policy.

34.     The top of the first page of the Commercial General Liability Coverage Form

states as follows:

> Throughout this policy the words "you" and "your" refer to the Named
> Insured shown in the Declarations, and any other person or organization
> qualifying as a Named Insured under this policy.  The words "we," "us"
> and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such
> under Section II – Who Is An Insured.  * * *

(Dkt. 1-10 at 149).

35.     The Insuring Agreement of "Coverage A – Bodily Injury and Property Damage

Liability" of the Commercial General Liability Form provides as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE
> LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally
> obligated to pay as damages because of "bodily injury" or
> "property damage" to which this insurance applies.  We will
> have the right and duty to defend the insured against any "suit"
> seeking those damages.  However, we will have no duty to
> defend the insured against any "suit" seeking damages for
> "bodily injury" of "property damage" to which this insurance
> does not apply. ***

(Dkt. 1-10 at 149).

36.     Condition 2 of Section IV of the Commercial General Liability Form of

Westfield's policy reads in part:

> **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> **a.** You must see to it that we are notified as soon as practicable of
> an "occurrence" or an offense which may result in a claim. To
> the extent possible, notice should include:
>
> **(1)** How, when and where the "occurrence" or offense took

6

place;

    **(2)** The names and addresses of any injured persons or witnesses; and

    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Dkt. 1-10 at 159).

37.    Section V of the Commercial General Liability Coverage Form, titled "Definitions," reads in part:

**13.**    "Occurrence" means an accident, including continuous or

repeated exposure to substantially the same general harmful conditions.

\* \* \*

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. \* \* \*

(Dkt. 1-10 at 163).

38. There is no language in the Westfield commercial package policy identifying

Walmart, Inc. or CBRE, Inc. by name. (Dkt. 1-10).

39. Endorsement CG 71 29 05 10 of the Westfield policy, titled "Commercial General

Liability Manufacturers Endorsement," reads in part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

Under **SECTION II - WHO IS AN INSURED** the following is added:

**WHO IS AN INSURED (SECTION II)** is amended to include as an insured any person or organization (defined as Additional Insured - Your Work) described below whom you are required to add as an additional insured on the policy under a written contract or agreement but the written contract or agreement must be:

a. Currently in effect or becoming effective during the term of this policy; and

b. Executed prior to the "bodily injury," property damage" or "personal injury and advertising injury," but only the following person or organization is an additional insured under this endorsement and coverage provided to such additional insured is limited and defined below:

**Additional Insured - "Your Work"** means:

That person or organization for whom you do work is an additional insured for liability due to your sole negligence and specifically re-sulting from "your work" for the additional insured which is the subject of the written contract or written agreement.

The insurance provided to the additional insured is limited as follows:

(1) The Limits of Insurance applicable to the additional insured are those specified in the written contract or agreement or in the Declarations of this policy, whichever is less. These Limits of Insurance are inclusive of, and not in addition to, the Limits of Insurance shown in the Declarations.

(2) The coverage provided to the additional insured by this amendment does not apply to "bodily injury" or "property damage" arising out of the "products-completed operations hazard" unless:
   (a) It is required by the written contract or written agreement, and
   (b) "Bodily injury" or "property damage" included within the "products-completed operations hazard" is not excluded by either the provisions of the Coverage Part or by endorsement.

(3) The insurance provided to the additional insured does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering or failure to render any professional service.

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended as follows:

> When required by written contract with any additional insured, owner, lessee or contractor to provide insurance on a primary and noncontributory basis, Condition **4.** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted and replaced by the following:
>
> 4. **Other Insurance**
>
> If other valid and collectible insurance is available for a loss we cover under Coverage **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> a. **Primary Insurance**
>
> This insurance is primary and noncontributory except when **b.** below applies.
>
> b. **Excess Insurance**
>
> This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis; * * *
>
> (4) If the loss is caused by the sole negligence of any additional in-sured, owner, lessee or contrac-tor. * * *

(Dkt. 1-10 at 197-198).

40.     Endorsement CG 20 01 12 19 of the commercial general liability coverage form

of the commercial package policy that Westfield issued to Arctic Snow & Ice Control reads in

part:

**PRIMARY AND NONCONTRIBUTORY –
OTHER INSURANCE CONDITION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any
provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other
insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would
be primary and would not seek contribution from any other insurance available to
the additional insured.

(Dkt. 1-10 at 141).

### VI. THE CBRE, INC./ARCTIC SNOW & ICE CONTROL, INC.
### SERVICE AGREEMENT

41.     CBRE, INC. and ARCTIC SNOW & ICE CONTROL, INC. entered a written

service agreement, dated as of October 1, 2021. (Dkt. 1-11) is a copy of the CBRE,

INC./ARCTIC SNOW & ICE CONTROL, INC. service agreement.

42.     Article A of the service agreement, titled "Definitions," reads in part:

3. "<u>CBRE Indemnified Parties</u>" means (i) CBRE and its officers,
directors, shareholders, employees, agents, representatives,
Affiliates, successors, and assigns, and (ii) Client and its officers,
directors, shareholders, employees, agents, representatives,

10

Affiliates, successors, and assigns.

4. "<u>Client</u>" means Walmart Inc. and its Affiliates.

(Dkt. 1-11 at 3).

43.     Article N of the service agreement, titled "Insurance Requirements," reads in part:

During the Term and as otherwise required under this Agreement, Service Provider shall provide the minimum amounts and scope of insurance coverage set forth in <u>Exhibit 5</u> to this Agreement with such Exhibit hereby being incorporated by reference as a material requirement of this Agreement and which shall not be construed in any way as a limitation of Service Provider's liability under this Agreement, including, without limitation, liability for claims denied or rejected by Service Provider's insurance company or the insurance companies of its agents or subcontractors. Service Provider shall not commence any Services until Service Provider has procured all of the required in insurance policies with minimum amounts of coverage as set forth in <u>Exhibit 5</u> which must comply with the requirements set forth below:

*       *       *

4.   <u>Additional Insured Endorsements</u>. All certificates of insurance provided under this Agreement shall include copies of endorsements to Service Provider's commercial general liability, workers compensation and automobile policies that include Client and CBRE (including all participating Affiliates) as additional insured(s) on appropriate ISO forms or equivalent form of Blanket Additional Insured Endorsement, covering the additional insureds for liability arising from all operations and completed operations of Service Provider.

*       *       *

6.   <u>Service Provider Insurance Primary</u>. Service Provider's insurance shall be deemed primary with respect to coverage extended to the additional insureds, whose insurance shall be excess and non-contributory with that required of Service Provider hereunder.

7.   <u>Waiver of Subrogation</u>. To the fullest extent permitted by law, all insurance policies shall contain provisions that the insurance companies waive the rights of recovery or subrogation against Client, CBRE, their respective Affiliates, and each of their and

11

their Affiliates' respective agents, officers, directors, shareholders, employees, insurers, successors and assigns.

8. Additional CBRE Rights. The failure to secure and maintain or add by endorsement the Indemnified Parties shall not act as a defense to the enforcement of the terms of this Agreement. Any failure to provide the agreed endorsements shall entitle CBRE to terminate this agreement or to acquire coverage necessary to protect Client and CBRE from the failure and charge the cost thereof to the Service Provider.

(Dkt. 1-11 at 13-14).

44.     Exhibit 5 of the service agreement, titled "Insurance Requirements," reads in part:

CBRE | GWS FACILITIES MANAGEMENT

RISK ADJUSTED INSURANCE LIMITS – U.S

| Tier Level | General Liability Occurrence/ Aggregate[1] | Umbrella Liability | Auto | Worker's Comp | Employers Liability | Errors & Omissions[2] | Crime[3] |
|---|---|---|---|---|---|---|---|
| I | $1M / $1M | N/A | $1M | Statutory | $1M | $1M | $1M |
| II | $1M / $1M | $2M | $1M | Statutory | $1M | $1M | $1M |
| III | $1M / $2M | $5M | $1M | Statutory | $1M | $1M | $1M |
| Product Only Suppliers - Delivered | $1M / $1M | N/A | $1M | N/A | N/A | N/A | N/A |
| Product Only Suppliers - Shipped | $1M / $1M | N/A | N/A | N/A | N/A | N/A | N/A |

| Tier I | Parking Lot Sweeping / Power Washing |
|---|---|
| Tier III | Snow Removal |

(Dkt. 1-11 at 52).

45.     Article O of the service agreement, titled "Indemnification and Settlement," reads

in part:

1. Indemnification. To the fullest extent permitted by law, Service Provider shall defend (with counsel approved by Client and/or CBRE), indemnify, pay, save and hold the CBRE Indemnified Parties harmless from and against any liabilities, damages, costs, expenses, suits, losses, claims, actions, fines and penalties (including, without limitation, court costs, reasonable legal fees and any other reasonable costs of litigation) (collectively, the "Claims") that any of the CBRE

Indemnified Parties may suffer, sustain or incur arising out of or in connection with:

a. any alleged or actual personal injuries, including death or property damages resulting Service Provider's work or presence on the Facilities or other work site, including but not limited to any negligent acts, errors or omissions, intentional misconduct or fraud of Service Provider or Service Provider Personnel, whether active or passive, actual or alleged, whether in the provision of the Services, failure to provide any or all of the Services or otherwise;

b. any alleged or actual breach of this Agreement by Service Provider or Service Provider Personnel; assertions under workers' compensation or similar employee benefit acts by Service Provider or its employees or agents, and/or any failure by Service Provider to pay any employment benefits and any taxes required of it of any nature whatsoever;

d. failure to comply with any Applicable Laws by Service Provider or Service Provider Personnel;

e. claims by any Service Provider employee or employees of Service Provider subcontractors, including, without limitation, for bodily injury or wrongful discharge; and/or;

f. any infringement or alleged infringement of any patent, copyright, trade secret of other proprietary right of any third party relating to the Services performed under this Agreement.

(Dkt. 1-11 at 16-17).

46. Schedule 1 of the Service Agreement reads in part: "16241 S Farrel Road" "Lockport" "IL." (Dkt. 1-11 at 38).

## VII. BASIS FOR RELIEF

### COUNT I: NO COVERAGE OBLIGATION TO WALMART, INC. UNDER THE WESTFIELD COMMERCIAL PACKAGE POLICY

1-46. Westfield adopts paragraphs 1 through 46 of sections I through VI as paragraphs 1 through 46 of Count I.

47. Westfield owes no duty to defend and/or indemnify Walmart, Inc. under the commercial package policy that Westfield issued to Arctic Snow & Ice Control for one or more of the following reasons:

a. Walmart, Inc.'s delay of eight (8) months in providing notice to Westfield of the

accident was unreasonable as a matter of law and constitutes a failure to meet a condition precedent to coverage against the *Broadway* lawsuit under the Westfield policy;

b. Walmart, Inc.'s delay of eight (8) months in providing notice to Westfield of the lawsuit was unreasonable as a matter of law and constitutes a failure to meet a condition precedent to coverage against the *Broadway* lawsuit under the Westfield policy;

c. Articles O the Service Agreement does not create additional insured status for Walmart, Inc.;

d. The Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100, et seq., applies to render Articles O of the Service Agreement void and wholly unenforceable, where the provisions promise contractual contribution that it not in the method that the Act provides for;

e. Even if the Contribution Act did not apply to bar Articles O, an insured contract situation does not exist, where Walmart, Inc.'s tort liability remains with Walmart, Inc.;

f. Pleading in the alternative, the Snow Removal Service Liability Limitation Act, 815 ILCS 675/10, applies to render Article O the Service Agreement void and wholly unenforceable;

g. Pleading in the alternative, Walmart, Inc. has not met all of the conditions for full primary coverage under endorsement CG 20 01 12 19, where Walmart, Inc. is an additional insured on other insruance rather than a named insured; and

h. There may be other bases for denying coverage and Westfield reserves the right to

plead them in the future.

48.     An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Westfield Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield Insurance Company owes no coverage obligation to Walmart, Inc. against the *Broadway* lawsuit, case no. 1:23-cv-01896 (N.D.Ill.); 2) awarding Westfield Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

### COUNT II: NO COVERAGE OBLIGATION TO CBRE, INC. UNDER THE WESTFIELD COMMERCIAL PACKAGE POLICY

1-46.     Westfield adopts paragraphs 1 through 46 of sections I through VI as paragraphs 1 through 46 of Count II.

47.     Westfield owes no duty to defend and/or indemnify CBRE, Inc. under the commercial package policy that Westfield issued to Arctic Snow & Ice Control for one or more of the following reasons:

    a. CBRE, Inc.'s delay in excess of three (3) months in providing notice to Westfield of the accident was unreasonable as a matter of law and constitutes a failure to meet a condition precedent to coverage against the *Broadway* lawsuit under the Westfield policy;

    b. CBRE, Inc.'s delay of three (3) months in providing notice to Westfield of the lawsuit was unreasonable as a matter of law and constitutes a failure to meet a condition precedent to coverage against the *Broadway* lawsuit under the Westfield policy;

c. Articles O the Service Agreement does not create additional insured status for CBRE, Inc.;

d. The Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100, et seq., applies to render Articles O of the Service Agreement void and wholly unenforceable, where the provisions promise contractual contribution that it not in the method that the Act provides for;

e. Even if the Contribution Act did not apply to bar Articles O, an insured contract situation does not exist, where Walmart, Inc.'s tort liability remains with CBRE, Inc.;

f. Pleading in the alternative, the Snow Removal Service Liability Limitation Act, 815 ILCS 675/10, applies to render Article O the Service Agreement void and wholly unenforceable;

g. Pleading in the alternative, CBRE, Inc. has not met all of the conditions for full primary coverage under endorsement CG 20 01 12 19, where CBRE, Inc. is an additional insured on other insurance rather than a named insured; and

h. There may be other bases for denying coverage and Westfield reserves the right to plead them in the future.

48. An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Westfield Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield Insurance Company owes no coverage obligation to CBRE, Inc. against the *Broadway* lawsuit, case no. 1:23-cv-01896 (N.D.Ill.); 2) awarding

16

Westfield Insurance Company its costs incurred; and 3) providing such further relief as the Court

deems just.

ESP KREUZER CORES LLP                         RESPECTFULLY SUBMITTED,
400 S. County Farm Road
Suite 200
Wheaton, Illinois 60187                       _____
(630) 871-1002; ARDC #6274517                 Jeffrey S. Barger
jbarger@ekclawfirm.com; lmurphy@ekclawfirm.com

17